IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ANGELA R., | |
| Plaintiff, | 8:20CV326 |
| v. | |
| ANDREW M. SAUL, Commissioner of Social Security, | MEMORANDUM AND ORDER |
| Defendant. | |

Plaintiff Angela R. ("Angela") seeks judicial review of the final decision of defendant Andrew M. Saul, Acting Commissioner of Social Security ("Commissioner"), denying Angela's claim for disability benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*. Before the Court are Angela's Motion for an Order Reversing the Commissioner's Decision (Filing No. 16) and the Commissioner's Motion to Affirm Commissioner's Decision (Filing No. 20). For the reasons stated below, the Court affirms the denial of benefits.

I. **BACKGROUND**

Born in 1972, Angela worked as a certified medical assistant for approximately eight years after graduating from college in 2007. She applied for disability benefits on January 23, 2018, alleging a disability beginning December 2, 2017. She later amended the onset date to April 19, 2018. The Social Security Administration ("SSA") denied her claim initially on July 6, 2018, and upon reconsideration on September 24, 2018.

At Angela's request, an SSA administrative law judge ("ALJ") held a hearing on October 17, 2019, at which Angela and a vocational expert ("VE") testified under oath. Angela was represented by counsel, who identified her severe impairments as Scheuermann's disease, a deformity of the thoracic spine; fibromyalgia; and cervical

degenerative disc disease. Her counsel also stated that the pain medication Angela took caused gastroparesis and colitis. Angela's counsel also noted "depressive disorder due to the fibromyalgia."

At the hearing, Angela testified she stopped working in approximately June of 2015 due to lower back pain. Having previously filed an application for benefits, which was denied by a different ALJ in November 2017, Angela explained her condition had gotten worse. She stated her primary physician, Dr. Lynette Moseman ("Dr. Moseman"), was managing her pain with medication (opioids), but that it was getting harder for her to concentrate and stay on task. She rated her pain as typically "around a six or seven" (presumably on a scale of one to ten) with the medication but said it would be an "unbearable" nine or ten without. Although the medication helps with the pain, it does cause stomach spasms and cramps for which she has seen a gastroenterologist.

Another possible side effect of the medication is problems with her hands. Angela described swelling, pain, and "locking" in her hands that make it difficult to write or grasp things. It also prevents her from standing at the stove and cooking.

Describing her typical day, Angela reported some difficulty performing ordinary household tasks without assistance from her husband. She does some laundry, but her husband usually "takes it out and folds it because" she gets pain in her arms "which radiates out into [her] back when [her] arms are up."

She gives her dog short walks four times a day until her husband comes home. She reads, listens to music, watches the news and Netflix, and visits with friends and family. She can drive but not for more than twenty or thirty minutes.

Angela stood at times during the hearing. She explained that sitting in one place makes her back uncomfortable, so she has to stand to stretch every five to ten minutes. When at home, she often lies down during the day to rest and naps a couple of times a day

as a result of fatigue and difficulty sleeping at night. She also struggles with depression and has difficulty concentrating.

On November 6, 2019, the ALJ denied Angela's claim for disability benefits, finding she was not disabled under the Act during the relevant period. Angela timely appealed. On June 15, 2020, the Appeals Council denied her request for review, which made "the ALJ's decision the final decision of the Commissioner." *See, e.g.*, *Kraus v. Saul*, 988 F.3d 1019, 1023 (8th Cir. 2021).

Having exhausted her administrative remedies, Angela seeks judicial review of the Commissioner's decision under 42 U.S.C. § 405(g). *See Smith v. Berryhill*, 587 U.S. \_\_\_, \_\_\_, 139 S. Ct. 1765, 1772-73 (2019).

## II. DISCUSSION
### A. Standard of Review

In reviewing the Commissioner's final decision under § 405(g), the Court neither reweighs the evidence presented to the ALJ, nor retries the issues in this case. *See Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009). The Court must affirm the Commissioner's findings unless "they are unsupported by substantial evidence or result from an error of law." *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018); *accord* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

"'[S]ubstantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill*, 587 U.S. \_\_\_, \_\_\_, 139 S. Ct. 1148, 1154 (2019). Despite its weighty name, the threshold for substantial evidence "is not high." *See id.*, 139 S. Ct. at 1154 ("Substantial evidence . . . is 'more than a mere scintilla.'" (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938))). In short, it "is less than a preponderance, but enough that a reasonable mind would find it

adequate to support the Commissioner's decision." *Schwandt v. Berryhill*, 926 F.3d 1004, 1008 (8th Cir. 2019).

In deciding whether substantial evidence supports the Commissioner's denial of benefits, the Court considers "both evidence that detracts from the Commissioner's decision, as well as evidence that supports it." *Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017). The Court defers "heavily" to the Commissioner's "findings and conclusions," *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010), and "will not reverse simply because some evidence supports a conclusion other than that reached by the Commissioner," *Fentress*, 854 F.3d at 1020. "If, after reviewing the record, the Court finds that it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the court must affirm the commissioner's decision." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001).

B. **Eligibility for Disability Benefits**

To qualify for disability benefits under the Act, Angela must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Pearsall*, 274 F.3d at 1217. The disability, not the impairment, must be continuous for at least twelve months. *See Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993). Angela is disabled under the Act only if her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

"The Commissioner uses a five-step evaluation to determine if a claimant is disabled." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. § 404.1520(a). In conducting that evaluation, the Commissioner considers

4

(1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals [presumptively disabling impairment listed in the regulations]; (4) whether the claimant can return to her past relevant work; and (5) whether the claimant can adjust to other work in the national economy.

*Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1520(a)(4)(i)-(v)).

Steps four and five of the process require the ALJ to assess the claimant's residual functioning capacity ("RFC"), *id.*, which is the most the claimant "can still do despite [her] limitations," 20 C.F.R. § 404.1545(a)(1). A claimant's RFC is "based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [her] limitations." *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003). "[I]t is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016).

After the administrative hearing in this case, the ALJ applied the five-step sequential process to Angela's claim. The ALJ first determined Angela "has not engaged in substantial gainful activity since April 19, 2018, the alleged onset date." *See* 20 C.F.R. § 404.1571 ("If you are able to engage in substantial gainful activity, we will find that you are not disabled."). At steps two and three, the ALJ noted "fibromyalgia, kyphosis, degenerative disc disease of the cervical spine, chronic obstructive pulmonary disease, and depressive order with anxiety" as severe impairments for Angela but determined none of those impairments—either alone or in combination—meets or medically equals the severity of a listed impairment. *See* 20 C.F.R. § 404.1520(c), (d).

Carefully considering "the entire record," the ALJ decided Angela

has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can lift and/or carry twenty pounds occasionally and ten pounds frequently; can stand and/or walk for six hours

5

in an eight-hour workday; can sit for six hours in an eight-hour workday; can occasionally perform all postural activities; cannot work on ladders or around hazards such as dangerous machinery and equipment; should avoid concentrated exposure to fumes; can frequently handle, finger, and feel; should avoid concentrated exposure to cold and heat. From a mental standpoint, can perform simple and routine tasks.

The ALJ concluded Angela's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms" but found her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [her] decision."

In particular, the ALJ found Angela's "allegation[s] of constant chronic pain are out of proportion to her typically unremarkable presentation during appointments." The ALJ further found that the medical records of Angela's examinations did not fully "reproduce her reported limitations." Noting Angela "generally did not seek more aggressive treatment to relieve pain, such as epidural shots or physical therapy, and merely relied largely on pain medication," the ALJ concluded Angela did "suffer from substantial medical conditions" but decided her RFC adequately accounted for the limitations caused by those conditions.

In examining the medical evidence, the ALJ found Dr. Moseman's opinions about Angela's physical limitations unpersuasive, unsupported, and inconsistent "with the medical evidence." The ALJ likewise found unpersuasive an opinion from Joseph L. Rizzo, Ph.D. ("Dr. Rizzo"), regarding Angela's mental limitations. The ALJ found that opinion was unsupported by Dr. Rizzo's examination and "inconsistent with the objective medical evidence" from treating sources. The ALJ determined the opinion appeared to be based largely on Angela's subjective complaints.

In contrast, the ALJ found opinions from Parvin G. Sampat, M.D., and Steven Higgins, M.D., persuasive as to Angela's physical limitations and found opinions from

Glenda Cottam, Ph.D. ("Dr. Cottam"), and Rebecca Braymen, Ph.D. ("Dr. Braymen"), persuasive as to her "moderate limitations in the area of concentration, persistence and pace," and "mild limitations" otherwise. In the ALJ's view, those findings were better supported by the medical record and more consistent with the objective medical evidence.

At step four, the ALJ decided Angela "is unable to perform any past relevant work." *See* 20 C.F.R. § 404.1565. Relying on the VE's response to the ALJ's hypothetical, the ALJ compared Angela's RFC to her past relevant work as a medical assistant and found she "is unable to perform [that] job as actually performed or generally performed."

Moving to step five, the ALJ considered Angela's "age, education, work experience, and" RFC and determined "there are jobs that exist in significant numbers in the national economy that [Angela] can perform," including cashier, cleaner, assembler, information clerk, bench hand, and document preparer. Again relying on the VE's testimony, the ALJ concluded Angela "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Accordingly, the ALJ determined Angela is not disabled under the Act.

C.  **Issues on Review**
   1.  **The RFC Determination**

Angela first argues that the "ALJ's RFC determination is not supported by sufficient medical opinion evidence." An ALJ's determination of a claimant's RFC must be "based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of her limitations." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (internal marks omitted) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). Although Angela "has the burden to prove her RFC," *Kraus*, 988 F.3d at 1024, "the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press [her] case," *Combs*, 878 F.3d at 647 (quoting *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010)).

7

Angela contends "the ALJ should have evaluated and discussed all the evidence from [her] prior application in the file while evaluating [Angela's] more recent application of disability benefits," including an opinion from Brian Hollis, M.D. ("Dr. Hollis"). In fact, Angela contends "res judicata *required* the ALJ to consider the evidence that [she] was limited to at least the sedentary exertional level, and the ALJ committed legal error by not doing so." She asserts, "Instead of, as res judicata required, starting at the beginning to determine [her] physical limitations with the prior ALJ RFC determination, the ALJ relied on the agency medical consultant opinions in the new application, which the ALJ found 'persuasive.'" According to Angela, the Court must reverse the ALJ's decision and remand her claim for further review "because the ALJ did not apply the principles of res judicata and start from the prior ALJ's findings." Angela's arguments are unavailing.

"Collateral estoppel and res judicata can apply in certain circumstances of social security determinations, when the issue involves the same evidence, and the same period of disability." *Aguiniga v. Colvin*, 833 F.3d 896, 900 (8th Cir. 2016). But those principles do not apply where—as here—a subsequent application for benefits involves a different time period and a different record.[1] *Id.* (citing *Rucker v. Chater*, 92 F.3d 492, 495 (7th Cir. 1996), and *Hardy v. Chater*, 64 F.3d 405, 407 (8th Cir. 1995)); *accord Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 933 (6th Cir. 2018) ("Res judicata bars attempts to relitigate the same claim, but a claim that one became disabled in 1990 is not the same as a claim that one became disabled in 1994." (quoting *Groves v. Apfel*, 148 F.3d 809, 810 (7th Cir. 1998))).

Angela is correct that an ALJ in a subsequent proceeding may, in certain circumstances, consider "evidence that is offered as proof of a disability, and not found persuasive by an ALJ in a prior proceeding, . . . in combination with new evidence for the

---

[1]Angela's original application covered the period from June 10, 2015, to December 1, 2017, when the ALJ in that case denied relief. The relevant period for her current application is April 19, 2018, to November 6, 2019. No one argues (and there is no evidence to suggest) the ALJ reopened Angela's prior application.

8

purpose of determining if the claimant has become disabled since the ALJ's previous decision." *Hillier v. Soc. Sec. Admin.*, 486 F.3d 359, 365 (8th Cir. 2007); *see also Robbins v. Sec'y of Health & Hum. Servs.*, 895 F.2d 1223, 1224 (8th Cir. 1990) (per curiam) (explaining that while the principles of res judicata generally limit a claimant's ability to rely on medical evidence from an earlier proceeding, "prior medical evidence" can "serve as a background for new and additional evidence of deteriorating mental or physical conditions occurring after the prior proceeding").

In some circumstances, an ALJ may also consider a prior ALJ's finding in reviewing a second application. *See Earley*, 893 F.3d at 933 (explaining that an ALJ honors the principles of finality, efficiency, and consistency "by considering what an earlier judge found"). But a subsequent ALJ is neither bound by those findings, nor must use them as the baseline for a subsequent RFC determination. *See id.*; *Rucker*, 92 F.3d at 495 (rejecting the argument that the "first ALJ's findings established" the claimant's "maximum" RFC "at that time and forever more" because the first RFC finding—though binding for the time period of the first application—was "not conclusive evidence of" the claimant's RFC "at a later date"). To the extent they are relevant at all, the materials from Angela's prior application simply don't have the broad preclusive effect she ascribes to them. *See Rucker*, 92 F.3d at 495 (concluding a prior ALJ's finding had "no effect . . . on an application for a subsequent time period"); *Hardy*, 64 F.3d at 407.

Angela faults the ALJ for "only evaluating the 'relevant period' for the application." Yet that is precisely what an ALJ is asked to do. *See Earley*, 893 F.3d at 933 ("When an individual seeks disability benefits for a distinct period of time, each application is entitled to review."); *cf. Rehder v. Apfel*, 205 F.3d 1056, 1061 (8th Cir. 2000) (concluding certain evidence was not probative of the claimant's condition during the relevant period).

To the extent Angela suggests the ALJ wholly ignored the materials related to her first application, the point is belied by the record. In determining Angela's RFC, the ALJ

9

specifically stated she "fully considered the medical opinions and prior administrative medical findings in" Angela's case in accordance with 20 C.F.R. § 404.1520c. Angela has not given the Court any compelling reason to doubt that statement. *See Wilburn v. Astrue*, 626 F.3d 999, 1003 (8th Cir. 2010) (presuming an ALJ "properly discharged his official duties and did in fact review" the materials he said he would review). Perhaps the ALJ could have said more on this issue, but "an ALJ is not required to discuss every piece of evidence submitted." *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998).

On appeal from a denial of benefits, the Court must "review the record to ensure that an ALJ does not disregard evidence or ignore potential limitations," but it need "not require an ALJ to mechanically list and reject every possible limitation." *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011). Having completed that review, the Court finds the ALJ adequately explained her evaluation of Angela's RFC and her determination is supported by substantial evidence in the record as a whole.

### 2. The ALJ's Hypothetical Question

Testimony from a qualified vocational expert that is "based on a properly phrased hypothetical question constitutes substantial evidence." *Cruze v. Chater*, 85 F.3d 1320, 1323 (8th Cir. 1996). "A hypothetical question to the vocational expert 'must precisely describe a claimant's impairments so that the vocational expert may accurately assess whether jobs exist for the claimant.'" *Hilliard v. Saul*, 964 F.3d 759, 763 (8th Cir. 2020) (quoting *Newton v. Chater*, 92 F.3d 688, 694-95 (8th Cir. 1996)).

The ALJ's third hypothetical to the VE included a mental limitation of "simple, routine tasks." Angela argues the hypothetical was deficient because it did not precisely state Angela's "limitations with detailed instructions, which limited her to short, simple instructions." According to Angela, "[t]he ALJ's RFC is error by shorting [Angela's] concentration limitations to 'can perform simple and routine tasks' without further explanation for why [her] concentration and side effect-related limitations were not accounted for in her RFC." The Court disagrees.

10

"A hypothetical question is properly formulated if it sets forth impairments 'supported by substantial evidence in the record and accepted as true by the ALJ.'" *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). "A hypothetical is not insufficient because it does not include all the health limitations *alleged* by the claimant." *Kraus*, 988 F.3d at 1027.

Here, the ALJ thoroughly evaluated the medical evidence regarding Angela's mental impairments and determined her limitations based on the record as a whole. In doing so, the ALJ closely examined Angela's reported difficulties with memory and concentration. After examining the medical record, including the results of the consultative evaluation, the ALJ determined Angela's ability "to remember eight digits forward and six digits reversed" indicated that while Angela did have mental impairments, they "may not be as persistent as alleged."

The ALJ credited opinions from Dr. Cottam and Dr. Braymen that Angela "had moderate limitations in the areas of concentration, persistence, and pace, and otherwise had mild limitations" but did not credit Dr. Rizzo's opinions regarding Angela's impairments with respect to memory, supervision, and adaptation. Emphasizing the "routine" and "conservative" nature of Angela's treatment, the ALJ concluded her treatment was "inconsistent with the alleged severity of her mental impairments and functional limitations." The ALJ stated she nevertheless "accounted for [Angela's] depression and anxiety by finding that she can perform simple and routine tasks."

In evaluating a claimant's RFC and formulating a hypothetical question, an ALJ must "include only those impairments that the ALJ finds are substantially supported by the record as a whole." *Hinchey v. Shalala*, 29 F.3d 428, 432 (8th Cir. 1994). An ALJ need not discuss every detail or "frame the claimant's impairments in the specific diagnostic terms used in medical reports" as long as she captures the "'concrete consequences' of those impairments." *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006) (quoting *Roe*

*v. Chater*, 92 F.3d 672, 677 (8th Cir. 1996)). Such is the case here. The ALJ's hypotheticals adequately captured the concrete consequences of the limitations the ALJ properly found were substantially supported by the record. To be sure, some evidence may have supported finding greater limitations, but that does not necessarily require reversal. *See*, *e.g.*, *Pearsall*, 274 F.3d at 1217-18; *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010) (finding substantial evidence supported the ALJ's RFC determination even though other medical evidence might have supported greater limitations).

Even if the Court were to conclude the hypothetical should have limited Angela to short, simple instructions, it is not clear that change would have materially altered the VE's testimony. On cross-examination, Angela's counsel added three mental limitations to the ALJ's hypothetical: (1) "the ability to deal with short and simple instructions," (2) the inability to "work under ordinary supervision," and (3) the inability to "adapt to changes in their environment." The VE testified the last two factors would prevent a person from being "competitively employable," but that the limitation to short, written instructions would fall "within the grace of normal behavior for unskilled work." Under the circumstances, "[a]ny inadequacy in the hypothetical was thus harmless." *England v. Astrue*, 490 F.3d 1017, 1023-24 (8th Cir. 2007) (concluding "that the hypothetical could have more clearly conveyed the limitations on executing simple and detailed instructions assessed by" medical experts but finding any error harmless because the claimant's "attorney posed to the VE a hypothetical that reflected these limitations, in response to which the VE testified that there would still be jobs" in the economy the claimant could perform).

Angela fares no better with her contention that "[t]he ALJ's failure to explain the divergence from the 'short, simple instructions' limitation offered—a Reasoning Level 1 limitation per the Dictionary of Occupational Titles [("DOT")]—was an error that warrants remand." First, as Angela concedes, "[t]he ALJ did identify one light exertional level

Reasoning Level 1 job," which the ALJ noted represented approximately 500,000 jobs in the national economy.

Second, Angela makes too much of the alleged "divergence." The Court acknowledges that some uncertainty can arise "regarding the interplay between unskilled work, jobs limited to simple instructions, and the DOT definitions of reasoning level 1 and 2 jobs" depending on "the facts and circumstances of" a particular case. *Hutson v. Saul*, No. 4:19-CV-3117, 2020 WL 5653518, at *2-5 (D. Neb. Sept. 23, 2020) (reversing and remanding the Commissioner's final decision based on "an apparent, unresolved conflict between the vocational expert's testimony and the [DOT]."). But the Court finds no unresolved conflict here.

This case falls well within the scope of cases like *Moore*, in which the Eighth Circuit found no conflict between a hypothetical that limited the claimant to "simple job instructions" and "simple, routine, and repetitive work activity at the unskilled task level" and the VE's identification of jobs that require Level 2 reasoning. 623 F.3d at 601-02, 604 (explaining the DOT's "Level 2 reasoning definition is an upper limit across all jobs in the occupational category, not a requirement of every job within the category"); *see also Hall v. Chater*, 109 F.3d 1255, 1259 (8th Cir. 1997) (explaining the claimant's "reliance on the DOT as a definitive authority on job requirements [wa]s misplaced" because "DOT definitions are simply generic job descriptions that offer 'the approximate maximum requirements for each position, rather than their range'" (quoting *Jones v. Chater*, 72 F.3d 81, 82 (8th Cir. 1995))).

The ALJ neither erred in framing her hypothetical, nor in relying on the VE's testimony in response. *See Courtney v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 1000, 1004 (8th Cir. 2018) (holding that an ALJ properly relies on a VE's testimony if the hypothetical is supported by substantial evidence and there is no conflict between that testimony and the DOT).

### 3. The Reasons for the "Weight" Afforded to Medical Opinions

Angela next argues "[t]he ALJ did not provide good reasons for the weight" she gave to opinions from Dr. Moseman, Dr. Rizzo, and Dr. Hollis. According to Angela, the ALJ ignored and misinterpreted important medical evidence, improperly "played doctor" in reviewing the treatment notes, and "presented boilerplate statements concerning the prior administrative findings at the initial and reconsideration phases of a claim as relating to prior hearing decisions and consultative examination opinions."

The Commissioner maintains that the ALJ's ability to consider Dr. Hollis's report was very limited as discussed above. *See Robbins*, 895 F.2d at 1224. With respect to Dr. Moseman, the Commissioner contends the ALJ properly discounted some of her opinions because they assess Angela as having "extreme limitations" that are unsupported by and inconsistent with the objective medical evidence. The Commissioner argues Dr. Rizzo's opinions "appear[ed] to be largely supported by [Angela's] subjective complaints," rather than by objective medical evidence.

Angela applied for disability benefits on January 23, 2018. For claims filed after March 27, 2017, an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a). In evaluating the persuasiveness of an opinion or finding, the ALJ primarily focuses on supportability and consistency. *Id.* § 404.1520c(b)(2). An opinion or finding is more persuasive if it is well-supported by objective medical evidence and consistent "with the evidence from other medical sources and nonmedical sources in the claim." *Id.* § 404.1520c(c)(1)-(2). An ALJ must also consider (1) the length of time the source treated the claimant, (2) the frequency of examination, (3) the purpose and extent of the treatment relationship, (4) the examining relationship, (5) any specialization the source may have, and (6) other factors that either support or contradict an opinion or finding. *Id.* § 404.1520c(c)(3).

After careful review, the Court finds the ALJ in this case duly considered the medical evidence and sufficiently explained her conclusions regarding the persuasiveness of the opinions at issue. *See, e.g.*, *Walker v. Commissioner*, 911 F.3d 550, 553 (8th Cir. 2018) ("[Good] reasons include internal inconsistency or that other physicians' opinions have better evidentiary support."). Rather than "play doctor" as Angela asserts, the ALJ properly evaluated the persuasiveness of Dr. Moseman's and Dr. Rizzo's opinions in light of the relevant factors and provided specific and legitimate reasons to discount some of those opinions.

In particular, the ALJ found that some of Dr. Moseman's opinions regarding Angela's physical limitations were unsupported by "objective medical imaging or physical and mental examinations." She further found those opinions inconsistent with Angela's examination records. *See Michel v. Colvin*, 640 F. App'x 585, 592-93 (8th Cir. 2016) (unpublished per curiam) ("When a treating physician's opinion is in conflict with other substantial medical evidence, then the ALJ may afford less weight to that physician's opinion.").

The ALJ similarly found that some of Dr. Rizzo's opinions about Angela's mental limitations lacked support in his examination notes and were contradicted by other record evidence. Highlighting those inconsistencies, the ALJ determined Dr. Moseman's and Dr. Rizzo's opinions unduly relied on Angela's subjective complaints of pain and other symptoms—complaints the ALJ found overstated. That was not error. An ALJ may properly discount (or even disregard) a medical opinion she reasonably finds to be unsupported by or inconsistent with objective medical evidence in the record. *See, e.g.*, *Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014).

4. **Angela's Subjective Complaints**

Angela last argues "the ALJ did not provide good reasons for finding [she] was not credibly reporting her limitations." The evaluation of a claimant's subjective complaints of pain and other symptoms "is primarily a matter for the ALJ to decide." *Edwards v.*

*Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003); *see also Johnson v. Chater*, 87 F.3d 1015, 1018 (8th Cir. 1996) ("[W]e will not substitute our opinions for that of the ALJ, who is in a better position to assess a claimant's credibility.").

In evaluating Angela's disability claim, the ALJ reviewed her allegations under the requirements of 20 C.F.R. § 404.1529 and Social Security Ruling 16-3p ("SSR 16-3p"). Section 404.1529(a) requires an ALJ to consider all of a claimant's alleged "symptoms, including pain, and the extent to which [those] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." The ALJ must evaluate all of the claimant's statements about her "symptoms, such as pain, and any description [the claimant's] medical sources or nonmedical sources may provide about how the symptoms affect [her] activities of daily living and [her] ability to work." *Id.*

SSR 16-3p further describes the process by which an ALJ should "evaluate the intensity, persistence, and limiting effects of an individual's symptoms in disability claims." *See* SSR 16-3p, Titles II & XVI: Evaluation of Symptoms in Disability Claims, 82 Fed. Reg. 49462-63 (Oct. 25, 2017). To better align SSA policy with the regulatory language and "clarify that subjective symptom evaluation is not an examination of an individual's character," SSR 16-3p eliminated use of the term "credibility" and the requirement of a formal "credibility" finding. *Id.* at 49463. As Angela points out, although the SSA's focus has shifted away from the claimant's "credibility," the underlying analysis is largely the same and remains consistent with *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), which "sets forth requirements for ALJs within the Eighth Circuit." *Randolph v. Barnhart*, 386 F.3d 835, 841 (8th Cir. 2004).

When evaluating a claimant's subjective complaints, an ALJ considers (1) "the claimant's daily activities"; (2) "the duration, frequency, and intensity of [her] pain"; (3) "precipitating and aggravating factors"; (4) "dosage, effectiveness, and side effects of medication"; and (5) any "functional restrictions." *Polaski*, 739 F.2d at 1322; *accord* 20

C.F.R. § 404.1529(c)(3). The ALJ also must consider the claimant's work history and "[t]he absence of an objective medical basis which supports the degree of severity of subjective complaints alleged." *Polaski*, 739 F.2d at 1322.

Angela contends "[t]he ALJ relied on only the objective medical evidence while determining [her] reported limitations were not credible, and as a result, denied [her] claim with a rationale that was expressly rejected in *Polaski v. Heckler*." In support, she points to the ALJ's brief summary of the RFC analysis, focusing on the ALJ's statement that support for Angela's "assertions of impairment-related symptoms are inconsistent with the other evidence in the record." According to Angela, "the ALJ just relied on the ALJ's view of the objective medical evidence." Angela again fails to present sufficient grounds for reversal.

To begin, she places too much emphasis on the ALJ's summary. A summary, by definition, does not address every aspect of the underlying analysis. Next, while the ALJ did not mention *Polaski* by name, she properly analyzed the pertinent factors and explained her reasons for discounting some of Angela's allegations. *See Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001) ("Where objective evidence does not fully support the degree of severity in a claimant's subjective complaints of pain, the ALJ must consider all evidence relevant to those complaints.").

The inconsistencies the ALJ identified between Angela's complaints of pain and other symptoms and the objective medical evidence properly played a major role in the ALJ's analysis, but they were not the only grounds for the ALJ's decision. *See Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) ("An ALJ may decline to credit a claimant's subjective complaints 'if the evidence as a whole is inconsistent with the claimant's testimony.'" (quoting *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006)). The ALJ's discussion of some of the relevant *Polaski* factors may be thin in spots, "[b]ut an ALJ need not explicitly discuss each factor." *Schwandt*, 926 F.3d at 1012.

Overall, the ALJ adequately considered Angela's daily activities; the persistence, intensity, and limiting effects of her pain; the positive effects of her medication; her functional limitations, and other relevant factors. For example, in discussing Angela's allegations, the ALJ noted Angela is able to drive, read, and watch Netflix and the news. The ALJ also discussed Angela's ability to socialize and to adapt and care for herself. *See*, *e.g.*, *Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (concluding the claimant's regular "activities, particularly when considered in conjunction with the medical record in [her] case," undermined her alleged limitations and supported the ALJ's decision to discredit her subjective complaints of pain). The ALJ acknowledged Angela's physical pain and other symptoms but found her subjective "allegation of constant chronic pain" was "out of proportion to her typically unremarkable presentation during appointments" and the relatively conservative nature of her treatment. *See id.*

The ALJ analyzed the relevant factors and gave good reasons based on the record as a whole for discounting Angela's subjective complaints. *See Nash*, 907 F.3d at 1090 ("Subjective complaints may be discounted if the claimant's testimony is inconsistent with the evidence as a whole."). The Court finds that substantial evidence supports the ALJ's evaluation of Angela's subjective complaints. *See*, *e.g.*, *Dixon v. Sullivan*, 905 F.2d 237, 238 (8th Cir. 1990) ("If an ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so, we will normally defer to that judgment."); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (upholding the ALJ's determination that a claimant's "subjective complaints of disabling pain lacked credibility" where the claimant's daily activities and conservative course of treatment did not support those complaints).

## III. CONCLUSION

Having carefully reviewed the administrative record in this case and the parties' respective submissions, the Court finds the Commissioner's denial of Angela's application for disability benefits is supported by substantial evidence. As such,

IT IS ORDERED:

1. Angela R.'s Motion for an Order Reversing the Commissioner's Decision (Filing No. 16) is denied.
2. The Commissioner's Motion to Affirm Commissioner's Decision (Filing No. 20) is granted, and the decision denying benefits is affirmed.
3. Angela R.'s Complaint (Filing No. 1) is dismissed with prejudice.
4. A separate judgment will issue.

Dated this 17th day of May 2021.

BY THE COURT:

Robert F. Rossiter, Jr.
United States District Judge